**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| ZACH WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>INSPYR SOLUTIONS, LLC.,<br><br>                Defendant. | Case No.:<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Zach Williams ("Plaintiff") brings this class action against Defendant INSPYR Solutions, LLC ("Defendant") for its failure to properly secure and safeguard Plaintiff's and Class members' protected health information ("PHI"), personally identifiable information ("PII"), and financial information stored within Defendant's information network.

## I.     INTRODUCTION

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Defendant is a technology and staffing company that operates locations across the country.[1] It markets itself as a nationwide expert in providing technology solutions and skilled talent tailored to meet its clients' business objectives and cultural needs.[2]

---

[1] Contact Us, INSPYR SOLUTIONS, https://www.inspyrsolutions.com/contact-us/ (last visited Feb. 4, 2026).

[2] About Us, INSPYR SOLUTIONS, https://www.inspyrsolutions.com/about-us/ (last visited Feb. 4, 2026).

3.      As part of running that business, Defendant collects and stores large amounts of sensitive personal, medical, and financial information about its employees, contractors, and clients.

4.      This information includes highly confidential protected health information, ("PHI"), personally identifiable information ("PII") (together "PHI/PII"), and financial information.

5.      People trust Defendant to keep this data safe because it is deeply private and can be misused if it falls into the wrong hands. Protecting that information is a basic and critical responsibility of any company that gathers it.

6.      Despite that responsibility, Defendant failed to safeguard the data it collected. Cybercriminals were able to infiltrate Defendant's computer systems and gain unauthorized access to this sensitive information in a significant data breach (the "Data Breach"). In other words, Defendant lost control of the very data it promised to protect.

7.      It is unclear how long the cybercriminals were inside Defendant's network before the intrusion was detected and this lack of visibility suggests that Defendant had no effective systems in place to monitor, identify, or respond to such unauthorized access.

8.      On information and belief, the attackers were able to move through Defendant's systems undetected and gain broad access to sensitive PHI/PII and financial information belonging to Defendant's employees, contractors, and clients.

9.      The Data Breach occurred because Defendant failed to implement basic, reasonable cybersecurity measures. Defendant did not adequately train its workforce on proper security practices and failed to maintain sufficient safeguards, monitoring tools, or protocols leaving this valuable information exposed and defenseless.

10.     Once personal, medical, and financial information is exposed, that bell can never be "un-rung." Before the Data Breach, this information was private and secure. Now it is permanently at risk, potentially circulating beyond Defendant's control and leaving affected individuals to worry about identity theft, fraud, and other misuse for years to come.

11.     Plaintiff is one of the individuals whose information was compromised in the Data Breach. He brings this class action on behalf of himself and on behalf of others whose private data was also exposed due to Defendant's misconduct.

12.     Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## II.      JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

14.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class member is a citizen of a state different from Defendant.

15.     This Court has personal jurisdiction over Defendant because it is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services, within this State.

16.     Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## III.   THE PARTIES

### A.   Plaintiff Zach Williams

17.     Plaintiff Zach Williams is an adult individual residing in Alexandria, Virginia. Plaintiff is a victim of the Data Breach.

18.     Plaintiff's PHI/PII and financial information was stored with Defendant as a result of his employment with Defendant.

19.     As a former employee of Defendant's, Plaintiff provided Defendant with highly sensitive personal, health, and financial information, who then possessed and controlled it.

20.     As a result, Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

21.     At all times herein relevant, Plaintiff is and was a member of the Class.

22.     As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: (1) time spent verifying the legitimacy and impact of the Data Breach; (2) time spent exploring credit monitoring and identity theft insurance options; (3) time spent self-monitoring his accounts with heightened scrutiny; and (4) time spent seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach.

23.     Plaintiff was also injured by the material risk to future harm he suffers based on Defendant's conduct; this risk is imminent and substantial because Plaintiff's data has been exposed in the Data Breach.

24.     The data involved—including Social Security numbers, healthcare information, and financial information—is highly sensitive and presents a high risk of identity theft or fraud and it is likely that some of the Class's information that has been exposed has already been misused.

25.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PHI/PII and financial information—a condition of intangible property that he entrusted to Defendant, which was compromised in and as a result of the Data Breach.

26.     Plaintiff, as a result of the Data Breach, has increased anxiety for his loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling his PHI/PII and financial information.

27.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PHI/PII and financial information, in combination with his name, being placed in the hands of unauthorized third parties—known criminals.

28.     Plaintiff has a continuing interest in ensuring that his PHI/PII and financial information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**B.      Defendant INSPYR Solutions, LLC**

29.     Defendant INSPYR Solutions, LLC is a limited liability company formed under the laws of Delaware and with its principal place of business at 600 Corporate Drive, Suite 500, Fort Lauderdale, Florida 33334.

**IV.     CLASS ACTION ALLEGATIONS**

30.     Plaintiff brings this Action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following Class:

All individuals residing in the United States whose PII/PHI was compromised in the Data Breach that impacted INSPYR Solutions, LLC on or about January 23, 2026.

31. Excluded from the Class are the following individuals and/or entities: (1) Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; (2) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (3) any and all federal, state, or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (4) all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

32. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

33. This Action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

34. <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are, upon information and belief, so numerous that joinder of all members is impractical, if not impossible.

35. <u>Commonality</u>: Plaintiff and the Class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    a. whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII and financial information;

b.      whether Defendant knew, or should have known, of the susceptibility of its data security systems to a data breach;

c.      whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d.      whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

e.      whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f.      whether Defendant adequately, promptly, and accurately informed Plaintiff and Class members that their PHI/PII and financial information had been compromised;

g.      how and when Defendant actually learned of the Data Breach;

h.      whether Defendant's conduct, including its failure to act, resulted in, or was the proximate cause of, the breach of its systems, resulting in the loss of the PHI/PII and financial information of Plaintiff and Class members;

i.      whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.      whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PHI/PII and financial information of Plaintiff and Class members;

k.      whether Plaintiff and Class members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or

declaratory relief, and/or accounting is/are appropriate as a result of Defendant's wrongful conduct; and

l.      whether Plaintiff and Class members are entitled to restitution as a result of Defendant's wrongful conduct.

36.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

37.     <u>Adequacy of Representation</u>: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class members, is committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

38.     Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class members or the Class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

39.     <u>Superiority of Class Action</u>: Since the damages suffered by individual Class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

40.     The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

41.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class in its entirety.

42.     Defendant's policies and practices challenged herein apply to and affect all Class members uniformly, and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

43.     Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the PHI/PII and financial information of Class members, and Defendant may continue to act unlawfully as set forth in this Complaint.

44.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## V.     FACTUAL ALLEGATIONS

### A.     The Data Breach and Defendant's Failed Response

45.     As part of its business, Defendant receives and maintains the PHI/PII and financial information of thousands of its employees, contractors, and/or clients.

46.     In collecting and maintaining this PHI/PII and financial information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law.

47.     Under state and federal law, businesses like Defendant have duties to protect its employees, contractors, and/or clients' PHI/PII and financial information and to notify them about breaches.

48. Defendant recognizes these duties, declaring in its "Privacy Policy" that:

This Privacy Policy describes how INSPYR Solutions and its subsidiaries ('we,' or 'us') collects, uses, discloses, and processes your Personal Information ('you' and 'your'), as well as rights that you may have regarding that information.[3]

We will retain each category of your Personal Information identified above for an amount of time that is reasonably necessary for us to use the information for the purposes disclosed herein and for any other permitted purposes, including retention of Personal Information pursuant to any applicable contract, law or regulation.[4]

We want your information to remain as secure as reasonably possible.[5]

We regularly monitor industry standard technical safeguards for securing your Personal Information and review our physical, technical, and organizational security practices to determine how we can prevent the loss, misuse, unauthorized access, alteration, or disclosure of your Personal Information.[6]

49. In its Privacy Policy, Defendant confirmed that it collects a vast assortment of PII/PHI and financial information:

Real name Alias Postal address Unique personal identifier Online identifier (e.g., username) Internet protocol address Telephone number Email address Account name Social security number Driver's license number Passport number Credit scores Signature Characteristics or description Insurance policy number Bank account number Credit card number Debit card number Other financial information Medical information Health insurance information . . . Race Color Religion (includes religious dress and grooming practices) Sex/gender Pregnancy, childbirth, breastfeeding and/or related medical conditions Gender identity, gender expression Sexual orientation Marital status Medical Condition (genetic characteristics, cancer or a record or history of cancer) Military or veteran status National origin Ancestry Disability (mental and physical including HIV/AIDS, cancer, and genetic characteristics) Genetic information Age (over 40) Request for family care leave Request for Pregnancy Disability Leave Retaliation for reporting

---

[3] Privacy Policy, INSPYR SOLUTIONS (May 9, 2025) https://www.inspyrsolutions.com/privacy policy/ (last visited Feb. 4, 2026).

[4] *Id*.

[5] *Id*.

[6] *Id*.

patient abuse in tax-supported institutions . . . Fingerprints Retina scans . . . Social security number Driver's license number State identification card number Passport number . . . Financial account information . . . Racial origin Ethnic origin Religious belief Philosophical belief Union membership . . . Contact information . . . Personal Information collected and analyzed concerning your sex life or sexual orientation, including status as a trans or non-binary individual[.][7]

50.     On or around January 23, 2026, Defendant was hacked by the notorious Russian cybercriminal syndicate "Clop."

51.     Clop, also known as Cl0p, is a sophisticated and internationally active cybercriminal organization that engages in ransomware attacks and data extortion. The group is widely recognized for its ability to conduct high-impact cyberattacks, often combining ransomware encryption with data theft to increase leverage over its victims.[8]

52.     Clop typically gains access to victim networks through a combination of phishing campaigns, malware deployment, and exploitation of unpatched software vulnerabilities in widely used enterprise platforms, including managed file transfer and business software systems.[9]

53.     Clop has shifted over time from encrypting files for ransom to predominantly engaging in data theft and extortion, threatening to publish stolen sensitive information if ransom demands are not met. This evolution demonstrates Clop's focus on maximizing pressure on victims through the disclosure of confidential data, rather than relying solely on encryption as leverage.[10]

---

[7] *Id.*

[8] Quorum Cyber, Clop Ransomware, https://www.quorumcyber.com/malware-reports/clop-ransomware/?utm_source=chatgpt.com (last visited Feb. 4, 2026).

[9] ComputerWeekly.Com, Clop resurgence drives ransomware attacks in February (Mar. 19, 2025) https://www.computerweekly.com/news/366621086/Clop-resurgence-drives-ransomware-attacks-in-February?utm_source=chatgpt.com (last visited Feb. 4, 2026).

[10] *Id.*

54.     While both domestic and foreign law enforcement organizations have conducted operations against Clop affiliates, including arrests in Ukraine in 2021, the group's core operators remain at large, and its criminal activities continue unabated.[11]

55.     On or about January 23, 2026, Clop claimed responsibility for the targeted cyberattack that resulted in the Data Breach and issued a warning that sensitive data would be leaked unless their demands are me.[12]

56.     A screenshot of the Clop ransom note retrieved from the Dark Web and posted on X (f/k/a Twitter) by user FalconFeeds.io is provided below.[13]



EXCELAS1.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

CLEARWAYGROUP.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

INSPYRSOLUTIONS.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

MODTECH.CA - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

WILDRIDGELANDSCAPE.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

RSTRT.IT - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

VISTA-TRAINING.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

4DITSOLUTIONS.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

BR-ALSETH.NO - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

VERTIGORELEASING.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

WFRFIRE.COM - PAGE CREATED, WARNING, WILL BE PUBLISHED SOON

---

[11] Breeched Company, Cl0p Group (Oct. 17, 2025) https://breached.company/clop-ransomware-inside-one-of-the-worlds-most-dangerous-cybercrime-operations/?utm_source=chatgpt.com (last visited Feb. 4, 2026).

[12] DeXpose, Clop Ransomware Strikes INSPYR Solutions (Jan. 25, 2026), https://www.dexpose.io/clop-ransomware-strikes-inspyr-solutions/ (last visited Feb. 4, 2026).

[13] X FalconFeeds.io, Ransomware Alert, https://x.com/FalconFeedsio/status/2014825273116725412 (last visited Feb. 4, 2026).

57.     Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PHI/PII and financial information. Thus, Defendant caused widespread injury and monetary damages.

58.     Because of Defendant's Data Breach, the sensitive PHI/PII and financial information of Plaintiff and Class members was placed into the hands of cybercriminals— inflicting numerous injuries and significant damages upon Plaintiff and Class members.

59.     Plaintiff and Class members were required to provide their PHI/PII and financial information to Defendant as a result of their dealings, and in furtherance of this relationship, Defendant created, collected, and stored Plaintiff's and Class members' sensitive information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

60.     Defendant had, and continues to have, obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiff's and Class members' PHI/PII confidential and to protect such PHI/PII from unauthorized access.

61.     Thus far, Defendant has failed to give notice warning Plaintiff and Class members about the Data Breach—thereby depriving them of the opportunity to try and mitigate their injuries in a timely manner.

62.     As a result, the precise number of persons affected by the Data Breach is not publicly known. But upon information and belief, the number of Class members can be ascertained from information in Defendant's custody and control. And upon information and belief, the

number of Class members is over one hundred members—as it includes its employees, contractors, and/or clients.

63.     Moreover, absent notice, Plaintiff and the Class members are left in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their PHI/PII and financial information going forward.

64.     Plaintiff and Class members can only speculate as to where their PHI/PII and financial information ended up, who has used it, and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

**B.      Defendant Collected and Stored Plaintiff's and Class Members' PHI/PII and Financial Information**

65.     Defendant acquired, collected, and stored and assured reasonable security over Plaintiff's and Class members' PHI/PII and financial information.

66.     As a condition of its relationships with Plaintiff and Class members, Defendant required that Plaintiff and Class members entrust Defendant with highly sensitive and confidential PHI/PII and financial information.

67.     Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

68.     By obtaining, collecting, and storing Plaintiff's and Class members' PHI/PII and financial information, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Plaintiff's and Class members' PHI/PII and financial information from unauthorized disclosure.

69.     Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PHI/PII and financial information.

70.     Plaintiff and Class members relied on Defendant to keep their PHI/PII and financial information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

71.     Defendant could have prevented the Data Breach, which began no later than January 23, 2026, by adequately securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class members' PHI/PII and financial information.

72.     Defendant's negligence in safeguarding Plaintiff's and Class members' PHI/PII and financial information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

73.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class members' PHI/PII and financial information from being compromised.

**C.     Defendant Had an Obligation to Protect Plaintiff's and the Class' Stolen Information**

74.     Defendant's failure to adequately secure Plaintiff's and Class members' sensitive PHI/PII and financial information breaches duties it owes Plaintiff and Class members under statutory and common law.

75.     Under HIPAA, covered entities have an affirmative duty to keep PHI private.  As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class members' data. Moreover, Plaintiff and Class members surrendered their highly sensitive PHI to Defendant under the implied condition that Defendant

would keep it private and secure.  Accordingly, Defendant also has an implied duty to safeguard that data, independent of any statute.

76.     Because Defendant is covered by HIPAA (45 C.F.R. §160.102 (2013)), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

77.     HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

78.     HIPAA's Security Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

79.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronically protected health information."  45 C.F.R. §164.302 (2013).

80.     "Electronic protected health information" is "individually identifiable health information . . . that is: (i) transmitted by electronic media; [and] (ii) maintained in electronic media."  45 C.F.R. §160.103 (2011).

81.     HIPAA's Security Rule requires Defendant to do the following:

    a.     ensure the confidentiality, integrity, and availability of all electronically protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.      protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.      protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.      ensure compliance by its workforce.

82.     HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic[ally] protected health information" under 45 C.F.R. §164.306(e) (2013), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic[ally] protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. §164.312(a)(1) (2013).

83.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following the discovery of the breach."

84.     Defendant was also prohibited by the Federal Trade Commission Act of 1914 (the "FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."[14]

85.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing,

---

[14]    The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

safeguarding, deleting, and protecting the PHI/PII and financial information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

86.     Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PHI/PII and financial information of Plaintiff and Class members.

87.     Defendant owed a duty to Plaintiff and Class members to design, maintain, and test its computer systems, servers, and networks to ensure that the PHI/PII and financial information was adequately secured and protected.

88.     Defendant owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the PHI/PII and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

89.     Defendant owed a duty to Plaintiff and Class members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

90.     Defendant owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

91.     Defendant owed a duty to Plaintiff and Class members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII and/or financial information from theft because such an inadequacy would be a material fact in the decision to entrust this PHI/PII and/or financial information to Defendant.

92.     Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

93.     Defendant owed a duty to Plaintiff and Class members to encrypt and/or more reliably encrypt Plaintiff's and Class members' PHI/PII and financial information and monitor user behavior and activity in order to identify possible threats.

**D.      The Stolen Information Is Valuable**

94.     PHI/PII and financial information are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

95.     Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $20015; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web16; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.17

96.     Identity thieves can use PHI/PII and financial information, such as that of Plaintiff and Class members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[15]     Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, DIGITALTRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Feb. 4, 2026).

[16]     Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Feb. 4, 2026).

[17]     *In the Dark*, VPNOVERVIEW (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 4, 2026).

97.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII and/or financial information is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

98.     Here, Defendant knew of the importance of safeguarding PHI/PII and financial information and of the foreseeable consequences that would occur if Plaintiff's and Class members' PHI/PII and financial information were stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach of this magnitude.

99.     As detailed above, Defendant is a sophisticated organization with the resources to deploy robust cybersecurity protocols.  It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class members.  Therefore, its failure to do so is intentional, willful, reckless, and/or grossly negligent.

100.     Defendant disregarded the rights of Plaintiff and Class members by, inter alia: (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' PHI/PII and financial information; (iii)

---

[18]     U.S. Gov't Accountability Off., GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited Feb. 4, 2026).

failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## VI.    CLAIMS FOR RELIEF

**COUNT ONE**
**Negligence**
**(On behalf of the Class)**

101.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

102.    At all times herein relevant, Defendant owed Plaintiff and Class members a duty of care, inter alia, to act with reasonable care to secure and safeguard their PHI/PII and financial information and to use commercially reasonable methods to do so.   Defendant took on this obligation upon accepting and storing the PHI/PII and financial information of Plaintiff and Class members in its computer systems and on its networks.

103.    Among these duties, Defendant was expected:

a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII and financial information in its possession;

b.    to protect Plaintiff's and Class members' PHI/PII and financial information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.    to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

       d.     to promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their PHI/PII and financial information.

104. Defendant knew that the PHI/PII and financial information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

105. Defendant knew, or should have known, of the risks inherent in collecting and storing PHI/PII and financial information, the vulnerabilities of its data security systems, and the importance of adequate security.

106. Defendant knew, or should have known, about numerous, well-publicized data breaches.

107. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class members' PHI/PII and financial information.

108. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PHI/PII and financial information that Plaintiff and Class members had entrusted to it.

109. Defendant breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PHI/PII and financial information.

110. Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class members, Defendant had a duty to adequately protect its data systems and the PHI/PII and financial information contained therein.

111.    Plaintiff's and Class members' willingness to entrust Defendant with their PHI/PII and financial information was predicated on the understanding that Defendant would take adequate security precautions.

112.    Moreover, only Defendant had the ability to protect its systems and the PHI/PII and financial information stored on them from attack.  Thus, Defendant had a special relationship with Plaintiff and Class members.

113.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class members' PHI/PII and financial information and promptly notify them about the Data Breach.  These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class members.

114.    Defendant breached its general duty of care to Plaintiff and Class members in, but not necessarily limited to, the following ways:

a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PHI/PII and financial information of Plaintiff and Class members;

b.    by failing to timely and accurately disclose that Plaintiff's and Class members' PHI/PII and financial information had been improperly acquired or accessed;

c.    by failing to adequately protect and safeguard the PHI/PII and financial information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PHI/PII and financial information;

d.      by failing to provide adequate supervision and oversight of the PHI/PII and financial information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PHI/PII and financial information of Plaintiff and Class members, misuse the PHI/PII, and intentionally disclose it to others without consent;

e.      by failing to adequately train its employees not to store PHI/PII and financial information longer than absolutely necessary;

f.      by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class members' PHI/PII and financial information;

g.      by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.      by failing to encrypt Plaintiff's and Class members' PHI/PII and financial information and monitor user behavior and activity in order to identify possible threats.

115.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

116.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class members have suffered damages and are at imminent risk of additional harms and damages.

117.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PHI/PII and financial information to Plaintiff and Class

members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PHI/PII and financial information.

118.    Defendant breached its duty to notify Plaintiff and Class members of the unauthorized access or to provide Plaintiff and Class members sufficient information regarding the breach.

119.    To date, Defendant has not provided notice to Plaintiff and Class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and Class members.

120.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps to secure their PHI/PII and financial information.

121.    There is a close causal connection between Defendant's failure to implement security measures to protect the PHI/PII and financial information of Plaintiff and Class members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class members.

122.    Plaintiff's and Class members' PHI/PII and financial information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PHI/PII and financial information by adopting, implementing, and maintaining appropriate security measures.

123.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

124.    The damages Plaintiff and Class members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

125.     As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI/PII and financial information is used; (iii) the compromise, publication, and/or theft of their PHI/PII and financial information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PHI/PII and financial information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' PHI/PII and financial information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII and financial information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

126.     As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

127.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PHI/PII and financial information, which remain in Defendant's possession and are subject to further

unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI/PII and financial information in its continued possession.

**COUNT TWO**
**Breach of Implied Contract**
**(On behalf of the Class)**

128.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

129.    Through its course of conduct, Defendant, Plaintiff, and Class members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class members' PHI/PII and financial information.

130.    Defendant required Plaintiff and Class members to provide and entrust their PHI/PII and financial information as a condition of their relationship with Defendant.

131.    Defendant solicited and invited Plaintiff and Class members to provide their PHI/PII and financial information as part of Defendant's regular business practices.

132.    Plaintiff and Class members accepted Defendant's offers and provided their PHI/PII and financial information to Defendant.

133.    As a condition of their relationship with Defendant, Plaintiff and Class members provided and entrusted their PHI/PII and financial information to Defendant.

134.    In so doing, Plaintiff and Class members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class members if their data had been breached and compromised or stolen.

135.    A meeting of the minds occurred when Plaintiff and Class members agreed to, and did, provide their PHI/PII and financial information to Defendant, in exchange for, amongst other things, the protection of their PHI/PII and financial information.

136.     Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant.

137.     Defendant breached its implied contracts with Plaintiff and Class members by failing to safeguard and protect their PHI/PII and financial information and by failing to provide timely and accurate notice to them that their PHI/PII and financial information was compromised as a result of the Data Breach.

138.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class members have suffered (and will continue to suffer): (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT THREE
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Class)

139.     Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

140.     Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

141.     Plaintiff and Class members have complied with and performed all conditions of their contracts with Defendant.

142.     Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PHI/PII and

financial information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class members, and its continued acceptance of PHI/PII and financial information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

143.    Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class members the full benefit of their bargains as  originally intended by  the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT FOUR**
**Unjust Enrichment**
**(On behalf of the Class)**

144.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

145.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

146.    Defendant, prior to and at the time Plaintiff and Class members entrusted their PHI/PII and financial information to Defendant, caused Plaintiff and Class members to reasonably believe that Defendant would keep such PHI/PII and financial information secure.

147.    Defendant was aware, or should have been aware, that reasonable patients and consumers would have wanted their PHI/PII and financial information kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were sub-standard for that purpose.

148.    Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class members' decisions to do business with or seek employment with Defendant.

149.     Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class members made their decisions to seek employment, make purchases, engage in commerce therewith, and seek services or information.

150.     Instead, Defendant suppressed and concealed such information.  By concealing and suppressing that information, Defendant denied Plaintiff and Class members the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiff and Class members.

151.     Defendant was unjustly enriched at the expense of Plaintiff and Class members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members; however, Plaintiff and Class members did not receive the benefit of their bargain because they paid for products and or services (or provided those services) that did not satisfy the purposes for which they bought/sought them.

152.     Since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits, compensation, or profits it realized from these transactions.

153.     Plaintiff and Class members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## VII.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and each member of the proposed Class, respectfully requests that the Court enter judgment in her favor and for the following specific relief against Defendant as follows:

1.      That the Court declare, adjudge, and decree that this Action is a proper class action and certify the proposed class under Fed. R. Civ. P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering it to cease from unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' PHI/PII and financial information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class members;

5.      For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, but not limited to, an Order:

      a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

      c.      requiring Defendant to delete and purge the PHI/PII and financial information of Plaintiff and Class members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class members' PHI/PII and financial information;

e.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems periodically;

f.      prohibiting Defendant from maintaining Plaintiff's and Class members' PHI/PII and financial information on a cloud-based database;

g.      requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.      requiring Defendant to conduct regular database scanning and securing checks;

i.      requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PHI/PII and financial information, as well as protecting the PHI/PII and financial information of Plaintiff and Class members;

j.      requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed

in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

    k.    requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

    l.    requiring Defendant to meaningfully educate all Class members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.    For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8.    For all other Orders, findings, and determinations identified and sought in this Complaint.

## VIII.  JURY DEMAND

Plaintiff, individually, and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: February 5, 2026        Respectfully submitted,

        By: */s/ Lindsey C. Grossman*

        Lindsey C. Grossman (FBN 105185)
        Michael E. Criden (FBN 714356)
        **CRIDEN & LOVE, P.A.**
        2020 Salzedo Street, Suite 302
        Coral Gables, Florida 33134

Tel: (305) 357-9000
lgrossman@cridenlove.com
mcriden@cridenlove.com

**NUSSBAUM LAW GROUP P.C.**
Linda P. Nussbaum*
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

*Pro Hac Vice admission forthcoming*

*Attorneys for Plaintiff and the Proposed Class*